IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMANDA H., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23-cv-6000 |
| v. ) | |
| ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amanda H. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After reviewing the record and the parties' arguments, the Court grants the Commissioner's motion and denies plaintiff's motion.

**BACKGROUND**

Plaintiff protectively applied for DIB benefits on March 24, 2021 alleging disability since February 7, 2020 due to narcolepsy without cataplexy, major depressive disorder, fibromyalgia, inflammatory polyarthritis, neuralgia and neuritis, intervertebral disc degeneration, mixed connective tissue disease, Ehlers-Danlos syndrome,[1] and traumatic brain injury. Administrative Record ("R.") 437,

---

[1] People with Ehlers-Danlos syndrome, "a group of inherited disorders that affect your connective tissues," usually have "overly flexible joints and stretchy, fragile skin." *Ehlers-*

462. Born in November 1989, plaintiff was 30 years old as of the alleged onset date, making her a younger person (under age 50). 20 C.F.R. § 404.1563(c); R. 437. She is a college graduate and worked in a variety of jobs between 2007 and 2018. R. 462-63, 474. Most recently, plaintiff spent a year and a half as a part-time retail associate doing consignment sales, but she stopped working on February 7, 2020 due to her conditions and has not engaged in substantial gainful activity since that date. R. 463-64, 474.

The Social Security Administration denied plaintiff's application initially on December 8, 2021, and upon reconsideration on June 10, 2022. R. 320-40. Plaintiff filed a timely request for a hearing and on November 1, 2022, she appeared before an administrative law judge ("ALJ"). R. 280. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Kathy Deeman (the "VE").[2] R. 282-319. On December 19, 2022, the ALJ found that plaintiff's Ehlers-Danlos syndrome, narcolepsy, fibromyalgia, congenital planus status post bilateral foot surgeries, obesity, major depressive disorder, anxiety, and posttraumatic stress disorder ("PTSD") are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-24.

---

*Danlos Syndrome*, Mayo Clinic (August 25, 2022) https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125, *archived at* https://perma.cc/TV7T-S5T9.

[2] The hearing was held telephonically due to the COVID-19 pandemic.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform sedentary work with certain postural, environmental, and non-exertional limitations. R. 24-35. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy. R. 35-37. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 37-38. The Appeals Council denied plaintiff's request for review on June 29, 2023. R. 1-6. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for remand, plaintiff argues that the ALJ: (1) failed to properly consider limitations described by her former employer; and (2) erred in weighing the opinion evidence of record.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

## DISCUSSION

A.  **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97,

4

103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B.  Analysis

   1.  **Employer Statement**

Plaintiff argues that the case must be remanded because the ALJ failed to properly consider evidence submitted by her former employer. Dkt. 14 at 7-12; Dkt. 19 at 1-3. Between October 2018 and March 2020, plaintiff worked as a part-time sales associate at a consignment store. On September 20, 2022, store manager Megan Barnish submitted an Employment Questionnaire describing plaintiff's difficulties with standing, walking, and performing her job. R. 447-49. Ms. Barnish said that plaintiff took extended absences due to a series of foot surgeries, worked irregular hours to attend physical therapy and medical appointments, and required more rest periods. R. 447. Plaintiff also needed to stay off her feet, so Ms. Barnish and other workers performed more physically demanding tasks whenever possible. *Id*. Ms. Barnish indicated that though plaintiff got along with co-workers and the public, normal work stress "took a large toll on" her physically. R. 448. Plaintiff also

5

struggled with attention and concentration and needed reminders to get back on track. *Id.*

In discussing Ms. Barnish's assessment, the ALJ expressly noted only her observation that plaintiff interacted well with coworkers and the public. R. 19, 23. Plaintiff says that by ignoring Ms. Barnish's negative findings, the ALJ failed to minimally articulate how she considered this evidence. Dkt. 14 at 9-10 (citing *Jose V. v. Kijakazi*, No. 21 CV 896, 2023 WL 8934938, at *9 (N.D. Ill. Dec. 27, 2023) (finding error where the ALJ did not explain how he considered testimony from the plaintiff's wife)). The Court agrees that the ALJ could have provided a more fulsome recitation of Ms. Barnish's evaluation, but any error the ALJ made was harmless.

The Seventh Circuit has "repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'" *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). Here, everything in Ms. Barnish's statement is duplicative of plaintiff's own testimony and self-reports, which the ALJ discussed in detail. R. 22-29. Plaintiff routinely complained of difficulty with standing, walking, concentration, and stress, and said she missed several days of work each month. R. 292. Plaintiff also described having good and bad days, explained how Ms. Barnish allowed her to sit for certain tasks, and reported struggling to work more than four hours per day. R. 286, 487, 547, 583. Since Ms. Barnish's report "served strictly to reiterate, and thereby corroborate,

6

[plaintiff's] own testimony concerning [her] activities and limitations," the ALJ cannot be said to have ignored an entire line of evidence supporting greater functional restrictions. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996).

Plaintiff disagrees, arguing that Ms. Barnish's statements reinforce medical records showing that plaintiff complained of fatigue that would limit her ability to stay on task and handle regular work stress. Dkt. 14 at 11. But as the ALJ noted, plaintiff's mental health providers routinely documented normal functioning, including normal memory and concentration, and intact judgment and insight. R. 30, 31, 1077, 1085, 1089, 1091, 1132, 1157, 1166, 1173, 1182, 1189, 1196, 1211, 1264, 1970-71, 1975-76, 1981, 1985-86, 1991-92. Consultative examiner Jeong H. Ryu, M.D. likewise indicated that plaintiff had normal memory, and "normal range of comprehension and concentration to the task at hand" on November 6, 2021, and May 21, 2022. R. 1336, 1521. Moreover, plaintiff does not dispute that the ALJ accounted for her moderate limitations in concentration, persistence, or pace by restricting her to simple, routine, and repetitive tasks. R. 23, 24. *See Crespo*, 824 F.3d at 673 (undeveloped arguments are waived).

Viewing the record as a whole, the Court "is not convinced that a longer or more detailed discussion [of Ms. Barnish's evaluation] was needed or would have materially changed the picture." *Barbara B. v. Saul*, No. 18 CV 50285, 2020 WL 70922, at *7 (N.D. Ill. Jan. 7, 2020). Plaintiff's request to remand the case for further consideration of that report is denied. *See Jarnutowski v. Kijakazi*, 48 F.4th

7

769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision").

### 2. Opinion Evidence

Plaintiff argues that the ALJ still committed reversible error by failing to properly weigh opinions from her treating foot surgeon, Alex McKanna, DPM, and her treating family practice physician, Mariya Dmytriv, M.D. Dkt. 14 at 12-15; Dkt. 19 at 3-7. Since plaintiff filed her claim in March 2021, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 CV 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical

8

opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. McKanna performed surgery on plaintiff's feet in July 2020, December 2021 and May 2022. R. 1352-53, 1366-67, 1780-81. On October 17, 2022, he completed a Medical Source Statement stating that plaintiff can stand and walk for less than two hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; frequently lift 10 pounds; and walk three blocks without needing to stop and rest. R. 2235-36. Plaintiff does not need to alternate positions to relieve pain or discomfort but does use a cane for "extended distances." R. 2235, 2237. Dr. McKanna described plaintiff's pain as "moderate" and indicated that she would need to take an unknown number of unscheduled breaks each workday for an unspecified amount of time, and would be absent two to three days per month. R. 2237.

The ALJ found Dr. McKanna's opinion partially persuasive. To begin, it is unclear whether Dr. McKanna's assessment was based solely on plaintiff's foot impairments, or the combined effect of all her impairments. R. 35. In addition, there are no treatment records from Dr. McKanna at all, much less ones suggesting that plaintiff would have an excessive number of unscheduled breaks and absences. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes."). The ALJ fairly discounted Dr. McKanna's stated limitations to the extent they appeared to be based solely on plaintiff's own allegations. R. 35. *See Ketelboeter*

9

*v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it."). Plaintiff stresses post-surgical physical therapy notes from February and May 2022 reflecting limited range of motion in the right ankle with moderate pain and slightly reduced strength of 4+/5, as well as an ongoing antalgic gait. Dkt. 14 at 14 (citing R. 1368, 1637). But the ALJ acknowledged those records and plaintiff fails to explain how either demonstrates that she is incapable of sedentary work. R. 30. Indeed, even Dr. McKanna agreed that plaintiff can sit for more than six hours, frequently lift 10 pounds, and walk three blocks without needing to stop and rest. R. 2235-36.

Plaintiff suggests that Dr. McKanna's opinion is still entitled to more weight because it is consistent with the October 18, 2022 Medical Source Statement from Dr. Dmytriv. Dkt. 14 at 15; Dkt. 19 at 4. Yet the ALJ reasonably discounted Dr. Dmytriv's opinion as well. On October 18, 2022, Dr. Dmytriv opined that plaintiff can sit, stand, and walk for less than one hour in an 8-hour workday; frequently lift 10 pounds; occasionally lift 20 pounds; and walk less than one block without needing to stop and rest. R. 2242-43. Plaintiff must alternate between sitting and standing to relieve pain or discomfort and occasionally use a cane. R. 2243-44. According to Dr. Dmytriv, plaintiff may need naps if her narcolepsy or pain become severe, which involves lying on the floor. R. 2242. In addition, plaintiff must take an unknown number of unscheduled breaks each workday for an unspecified amount of time, and would be absent four or more days per month. R. 2244-45.

10

The ALJ found the extreme limitations set forth by Dr. Dmytriv inconsistent with her own treatment notes. R. 35. The Court sees no error in this assessment. In July 2020, shortly after the February 7, 2020 alleged disability onset date, Dr. Dmytriv cleared plaintiff for foot surgery based on normal examination findings. R. 220. When plaintiff returned to Dr. Dmytriv in January and February 2021, she was doing well with no concerns. R. 2196-97. Exams during both appointments were essentially normal and plaintiff reported that her exercise regimen included hula hooping, horseback riding, and walking. R. 2197-99. During a follow-up exam on September 14, 2021, plaintiff was generally feeling better and her exam was normal. R. 2194.

Plaintiff's next appointment with Dr. Dmytriv was on January 6, 2022, approximately three weeks after her December 17, 2021 foot surgery. Plaintiff was still taking pain medications after the procedure but was not in acute distress. R. 2193. Dr. Dmytriv conducted another pre-surgical exam of plaintiff on May 10, 2022, which was normal. R. 2191-92. At a follow-up appointment with Dr. Dmytriv on June 22, 2022, several weeks after the May 12, 2022 foot surgery, plaintiff was crying when discussing her pain and in emotional distress. R. 2195. She said that it took her a whole day to do laundry and she was unable to "walk incline." *Id.* But a physical exam that day did not document any specific functional impairment. *Id.* The last available record from Dr. Dmytriv is dated July 19, 2022. Dr. Dmytriv noted that plaintiff was going for an MRI of her foot and could require an additional

11

surgery. Once again, she did not identify any functional limitations or impairments. R. 2191.

The ALJ reasonably found these records in conflict with Dr. Dmytriv's opinion that plaintiff can barely sit, stand, focus, or function at work. R. 35. *See Pavlicek* 994 F.3d at 781. The ALJ also fairly observed that the opinions from both Dr. Dmytriv and Dr. McKanna conflict with the assessment from consultative examiner Ryu. R. 35. His November 6, 2021 exam reported full range of motion throughout, normal gait, no difficulty sitting or standing, full grip strength, intact memory and concentration, mild difficulty squatting and arising, and moderate difficulty with toe-walk. R. 1336. Similarly, on May 21, 2022, less than two weeks after plaintiff's third foot surgery, Dr. Ryu observed lacerations and sutures in plaintiff's right foot but she had full range of motion in the ankles, shoulders, elbows, wrists, hips, knees, and spine with no joint swelling or tenderness. R. 1521. Plaintiff had a limping gait, used a cane to walk, and exhibited mild difficulty getting on and off exam table, doing tandem gait, and squatting and arising. *Id*. At the same time, plaintiff once again had no problems sitting and standing, had full grip strength, and presented with intact memory and normal concentration. *Id*. An ALJ may discount a treating physician's statement that is "inconsistent with other objective evidence in the record." *Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)).

12

Plaintiff finds it significant that Dr. Dmytriv consistently diagnosed her with chronic pain. Dkt. 14 at 14; Dkt. 19 at 4. But "[plaintiff] having been diagnosed with [an] impairment[ ] does not mean [it] imposed particular restrictions on her ability to work." *Weaver v. Berryhill*, 746 F. Appx. 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). As explained, Dr. Dmytriv's notes do not identify any limitations in plaintiff's functioning aside from her self-report regarding trouble doing laundry and walking on an incline less than one month after a foot surgery. R. 2195.

Also unavailing is plaintiff's speculation that she must have significant ongoing functional limitations because she had three foot surgeries. Dkt. 14 at 14-15. The record does not support this assertion and "[u]nsubstantiated claims are of course, no substitute for evidence." *Stewart v. Berryhill*, 731 F. Appx. 509, 510 (7th Cir. 2018) (internal quotations omitted). Finally, plaintiff's cursory argument about absences stemming from her depressive disorder, which she raised only in the reply brief, are waived. *See James L. v. O'Malley*, No. 22 CV 50213, 2024 WL 5318832, at *4 (N.D. Ill. Nov. 26, 2024) ("[A]rguments raised, in passing, for the first time on reply are waived and may properly be rejected.").

Viewing the record as a whole, the ALJ did not commit reversible error in assessing the opinion evidence of record. *Jarnutowski*, 48 F.4th at 773 (courts "apply a very deferential standard of review to the ALJ's decision"). "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions

13

the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of the opinion evidence is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [14] is denied, and the Commissioner's motion for summary judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 9/11/2025